**PG&E GAS TRANSMISSION, Texas Corporation f/k/a Valero Energy Corporation, et al., Appellants,**

v.

**The CITY OF EDINBURG, Texas, Appellee.**

No. 13–98–630–CV.

Court of Appeals of Texas, Corpus Christi.

April 5, 2001.

Opinion on Further Rehearing Aug. 2, 2001.

---

Christina Carlson Dodds, Austin, Eduardo R. Rodriguez, Rodriguez, Colvin & Chaney, Brownsville, Cynthia Keely Timms, Dallas, Sara Murray, Soules & Wallace, San Antonio, Daniel Bishop, Watson, Bishop, London & Galow, Austin, Jerry K. Clements, Locke, Purnell, Rain & Harrell, Paul D. Andrews, Soules & Wallace, San Antonio, E. Lee Parsley, Locke Liddell & Sapp, Austin, Luther H. Soules, Iii, Soules & Wallace, San Antonio, Reagan Wm. Simpson, Fulbright & Jaworski, Houston, for appellants.

David C. Garza, Garza & Garza, Brownsville, Jennifer Bruch Hogan, Hogan, Dubose & Townsend, Benjamin L. Hall, III, Elizabeth B. Hawkins, O'Quinn & Laminack, Robert M. Roach, Cook, Roach & Lawless, Houston, Dana Livingston Cobb, Cook, Roach & Lawless, Austin, J.A. 'Tony' Canales, Canales & Simonson, P.C., Corpus Christi, Russell S. Post, Hogan, Dubuse & Townsend, Houston, for appellee.

Before Justices HINOJOSA, CHAVEZ [1] and RODRIGUEZ.

## OPINION

Opinion by Justice CHAVEZ.

This court previously held that we did not have jurisdiction to hear the city of Edinburg's appeal of pre-trial motion for partial summary judgment. The city of

---

1. Retired Justice Chavez assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1988).

Edinburg has now filed a motion for rehearing in which it argues that we do have jurisdiction to hear its appeal of this motion.

■ As a general rule, appellate courts do not have jurisdiction to hear denied motions for summary judgment on appeal. *Ackermann v. Vordenbaum,* 403 S.W.2d 362, 365 (Tex.1966); *Hines v. Commission for Lawyer Discipline,* 28 S.W.3d 697, 700 (Tex.App.—Corpus Christi 2000, not pet.); *Highlands Mgmt. Co. v. First Interstate Bank of Tex., N.A.,* 956 S.W.2d 749, 752 (Tex.App.—Houston [14th Dist.] 1997, pet. denied). An exception to this rule may occur when both parties have moved for summary judgment and one such motion is granted and the other is denied. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). Under these circumstances the reviewing court should determine all questions presented, and may reverse the trial court judgment and render such judgment as the trial court should have rendered. *Id.* The city of Edinburg correctly argues that these are the circumstances before us. We therefore have jurisdiction to review the city's pre-trial motion for summary judgment. In all respects not explained in this opinion on rehearing, the opinion of this Court remains unchanged.

■ By way of a pre-trial motion for partial summary judgment, the city argued that SU should have to pay a franchise fee exceeding 4%, based on a "most favored nations" provision in the franchise agreement. The city appeals the trial court's denial of this motion, and the trial court's grant of Southern Union's motion for summary judgment regarding this issue.

The "most favored nations" provision stated

In the event the Grantee [RGVG/SU] should pay any other municipality which it serves a greater percentage than four (4%) percent of its said gross receipts, the Grantee hereby agrees that this franchise shall automatically be amended to provide for the payment of such higher percent to the City of Edinburg

. . .

The city argues that because SU had franchise agreements in other municipalities that obligated it to pay more than 4% as a franchise fee, the "most favored nations" clause should be interpreted in light of the area serviced by RGVG at the time the contract was formed.

The parties agree that when SU acquired RGVG, SU assumed the role of "grantee" and assumed all the rights and obligations of RGVG under the franchise agreement. *See Kirby Forest Indus., Inc. v. Dobbs,* 743 S.W.2d 348, 354 (Tex.App.—Beaumont 1987, writ denied) (assignee's rights are same as those as existed in assignor at time of assignment); *see also State Fidelity Mortg. Co. v. Varner,* 740 S.W.2d 477, 480 (Tex.App.—Houston [1st Dist.] 1987, writ denied) (assignee obtains right, title, and interest of assignor at time of assignment). SU relied on an affidavit from Bill Knox, regional vice president for RGVG and SU, which stated that, at the time the franchise agreement was reached, RGVG served only cities in the Rio Grande Valley area. RGVG argues that this was proper evidence of the circumstances surrounding the formation of the contract, and that the trial court properly relied on Knox's affidavit in determining that the parties intended that the "most favored nations" clause would only apply to municipalities served by the grantee in the Rio Grande Valley area.

■ When construing a contract, our primary goal is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). In determining the parties'

agreement, we are to examine all parts of the contract and the circumstances surrounding the formulation of the contract. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 591 (Tex. 1996). Therefore, the trial court properly considered Knox's affidavit as evidence of the circumstances surrounding the execution of the franchise agreement. However, we do not agree that the fact that RGVG was limited to the Rio Grande Valley at the time the franchise agreement was reached means that the most favored nations clause would be limited to the Rio Grande Valley for the duration of the franchise agreement. The construction urged by SU would mean that, if RGVG had expanded to serve municipalities outside of the Rio Grande Valley area that required payment of a higher percentage in franchise fees, RGVG would not be obligated to match that higher percentage in its payments to Edinburg. If the parties had intended to limit the most favored nations clause to municipalities in the Rio Grande Valley, they could have included such a provision in the agreement. *See, e.g., Tenneco Inc. v. Enterprise Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996) (courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained). Instead, the agreement required the grantee to match the percentage it paid to "any other municipality which it serves."

SU also relies on *Capitan Enterprises, Inc. v. Jackson,* 903 S.W.2d 772 (Tex. App.—El Paso 1994, writ denied). In that case, Jackson had sold his small oilfield flooding business to GPWC and accepted a "non-compete" clause, but was allowed 5% of the revenues over the next ten years from oilfield flooding by GPWC or its assigns, in certain counties. GPWC was eventually acquired by Shell, which operated a far more extensive oilfield flooding business than Jackson or GPWC had done. The El Paso court held that Jackson was not entitled to 5% of Shell's revenues from the counties in question, and rendered judgment that Jackson take nothing. *Id.* at 776.

While we acknowledge that the issues presented in *Capitan* are similar to those faced in this case, we are not persuaded by the El Paso court's reasoning. The El Paso court reasons that Jackson should not be entitled to 5% of Shell's revenue because Shell's business is much bigger than that contemplated when the original contract was formed. The problem with this reasoning is, how big is too big? What is the threshold at which an assignee, which assumed a contract obligating it to pay 5% of its revenues, may be excused from that obligation because the assignee is too much bigger than its predecessor? Just as the trial court in our case did not define the limits of the vague term "Rio Grande Valley," the El Paso court does not tell us at what point an assignee becomes too big. Rather, the El Paso court renders judgment that Jackson take nothing, despite the fact that Jackson was surely entitled to 5% of the revenues from something.

What if GPWC had gone out of business? That was a risk Jackson took. What if GPWC had expanded its business in the relevant counties? Then Jackson would have received a higher fee. We fail to see how it makes any difference that the contract was assumed by an assignee which did more extensive business. We decline to follow the reasoning of *Capitan.*

We hold that the trial court improperly limited the most favored nations clause to the undefined "Rio Grande Valley" area, and erred in not granting the city's motion for partial summary judgment. The city, however, did not offer any summary judg-

ment evidence that SU was paying other municipalities a higher percentage of fees than it was paying the city. Without such evidence, the city failed to show that it could be entitled to additional fees. Since the city did not offer any summary judgment evidence to raise a fact issue, the summary judgment may be affirmed. *See Earle v. Ratliff,* 998 S.W.2d 882, 886–87 (Tex.1999). The city's motion for rehearing is overruled.

Southern Union has filed a motion for rehearing contending that it was improperly assessed a portion of the attorney's fees awarded to the city. We agree. The award of the trial and conditional appellate attorney's fees was based on the breach of contract claim. We held that SU had no obligation to pay franchise fees for transporting gas sold by Reata and others because it was not a part of the Valero family. Therefore SU did not breach the contract. Accordingly, we grant SU's motion for rehearing and reform our opinion so as to exclude SU as a party jointly and severally liable for the trial and conditional appellate attorney's fees.

We also grant PG & E's motion to correct the style of the case. All other motions for rehearing are overruled.[2]

## ORDER ON FURTHER REHEARING

The City of Edinburg ("City") has requested further review of our previous order on rehearing. The City contends that we affirmed the trial court's judgment on Southern Union's motion for summary judgment on a ground not presented in the motion. Southern Union responds that if the City is now contending that the motion was ambiguous, it has waived that complaint because it did not specially except to the motion for summary judgment. We

grant the City's motion for further rehearing.

Rio Grande Valley Gas Co. was awarded a franchise agreement by the City of Edinburg to supply natural gas to residents within the city. The franchise agreement required Rio Grande Valley Gas Co. ("RGVG") to pay the City 4% of gross receipts of gas sales within the city. The agreement contained a Most Favored Nations Clause that escalated the percentage in the event RGVG paid "[a]ny other municipality which it serves a greater percentage than four (4%) per cent of its said gross receipts...."

On October 1, 1993, RGVG merged into Southern Union Company. Southern Union Gas Company (SU), a division of Southern Union Company, then succeeded to the interests of RGVG under the franchise agreement. SU sent a notice of the merger to the City and informed the City that "[S]outhern Union Gas Company hereby accepts the terms and conditions of such ordinance and agrees to provide natural gas distribution service with the City of Edinburg in accordance therewith." SU requested no clarification of, nor exception to the agreement.

SU's sole ground for summary judgment was that "[p]ayment of a higher franchise tax to other municipalities outside the Rio Grande Valley Region by Southern Union Gas Company does not violate the terms of the Most Favored Nations Clause." SU supported its motion with the notice of merger it had sent the City and the affidavit of Bill Knox, Regional Vice President for the Rio Grande Region for SU. Neither the notice nor the affidavit contains a definition of the "Rio Grande Valley Region."

Both SU's motion and the City's counter-motion for summary judgment only

2. The style of appellants' names in our prior opinion should read, "PG & E Gas Transmission, Texas Corporation, et. al." instead of "Rio Grande Valley Gas Company."

sought construction of the Most Favored Nations Clause. And, we have already held that the trial court improperly limited the Most Favored Nations Clause to the undefined "Rio Grande Valley" area and erred in not granting the City's motion for partial summary judgment. Accordingly, we reverse the judgment of the trial court on this issue and remand it for further proceedings thereon.

PG & E appellants VEC, VNGC, VTC, and REATA filed a joint motion for further rehearing in which they complain that we granted SU's motion for rehearing without requesting a response from them. We grant their motion and reconsider SU's motion for rehearing. The PG & E appellants also ask us to affirm the trial court's judgment making SU liable for RGVG's liabilities.

As we have noted, in 1993 SU succeeded to the interests of RGVG when the two entities merged. As the surviving entity, SU accepted the terms and conditions of the ordinance and RGVG ceased to exist. Throughout the trial and the appellate process SU has responded on its and RGVG's behalf. Therefore, in view of our action today, we reaffirm our initial ruling that Valero Energy Corporation, Valero Transmission Company, Valero Natural Gas Co., Reata Industrial Gas Company and Rio Grande Valley Gas Co./Southern Union Company are jointly and severally liable for the trial court's award of $3,518,000 in trial and conditional appellate attorney's fees. We also affirm the trial court's judgment providing that SU is liable for RGVG's liabilities.

All other complaints in the motions for rehearing are overruled.